## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VIP CINEMA HOLDINGS, INC., *et al.*,[1] | ) | Case No.   20-10345 (MFW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re Docket No. 16** |

## INTERIM ORDER (A) AUTHORIZING THE DEBTORS TO (I) OBTAIN POSTPETITION FINANCING, (II) USE CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES, (V) MODIFYING THE AUTOMATIC STAY AND (VI) SCHEDULING A FINAL HEARING; AND (B) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of VIP Cinema Holdings, Inc. (the "Borrower"), and its

affiliated debtors, each as a debtor and debtor in possession (collectively, the "Debtors") in the

above-captioned cases (the "Chapter 11 Cases") for the entry of an order (this "Interim Order")

pursuant to sections 105, 361, 362, 363(b), 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1),

364(e), 503, 506(c) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the

"Bankruptcy Code"), Rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") and Rules 2002-1, 4001-2, 9006-1, and 9013-1 of the Local

---

[1]   The Debtors in these Chapter 11 Cases, for which joint administration has been requested, along with the last four digits of their federal tax identification numbers, are as follows:  VIP Cinema Holdings, Inc. (2049); HIG Cinema Intermediate Holdings, Inc. (4710); VIP Components, LLC (4648); VIP Cinema, LLC (7167); and VIP Property Management II, LLC (1421).

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.  The facts and circumstances supporting the Motion and this Interim Order are set forth in (a) the *Declaration of Lloyd A. Sprung in Support of the Debtors' Motion for (A) Authorization to (I) Obtain Postpetition Financing, (II) Use Cash Collateral, (III) Grant Liens and Provide Superpriority Administrative Expense Status, (IV) Grant Adequate Protection, (V) Modify the Automatic Stay, and (VI) Schedule a Final Hearing; and (B) Related Relief* (the "Sprung Declaration") and (b) the *Declaration of Stephen Spitzer in Support of the Debtors' Motion for Debtors (A) Authorization to (I) Obtain Postpetition Financing, (II) Use Cash Collateral, (III) Grant Liens and Provide Superpriority Administrative Expense Status, (IV) Grant Adequate Protection, (V) Modify the Automatic Stay, and (VI) Schedule a Final Hearing; and (B) Related Relief* (the "Spitzer Declaration"), and (c) the *Declaration of Stephen Spitzer, Chief Restructuring Officer of the Debtors, in Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration").

Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District

of Delaware (the "Local Rules") requesting, among other things:

(i)     authorization for (a) the Borrower to obtain and (b) HIG Cinema Intermediate Holdings, Inc. ("Holdings") and all direct and indirect domestic subsidiaries of Holdings, other than the Borrower, who are Debtors, (collectively, the "Guarantors" and, together with the Borrower, the "Credit Parties") to guarantee, in each case, postpetition financing in an aggregate principal amount of up to $33.00 million (the "DIP Facility" and the obligations thereunder, the "DIP Obligations") as evidenced by the DIP Credit Agreement (as defined below), to be provided by certain Prepetition First Lien Lenders (the "DIP 1L Lenders") and the Second Lien Prepetition Lender (the "DIP 2L Lender" and, together with the DIP 1L Lenders, collectively, the "DIP Lenders"), comprising (1) $11.00 million in principal amount of new money term loan commitments from the DIP 1L Lenders (the "DIP New Money 1L Commitments" and, the term loans thereunder, the "DIP New Money 1L Loans"); (2) $2.00 million in principal amount of new money term loan commitments from the DIP 2L Lender (the "DIP New Money 2L Commitments" and, the term loans thereunder, the "DIP New Money 2L Loans" and, the DIP New Money 1L Loans together with the DIP New Money 2L Loans, the "New Money DIP Loans"); and (3) upon entry of the Final Order (as defined below) roll-up term loans in an aggregate principal amount of up to $20.00 million (the "Roll-Up Loans" and, together with the New Money DIP Loans, the "DIP Loans") representing the roll-up of $20.00 million in aggregate principal amount of Prepetition First Lien Loans (as defined below) held by the DIP 1L Lenders and allocated based on their *pro rata* share of DIP New Money 1L Commitments;

(ii)    authorization for the Credit Parties to (a) execute, deliver and enter into (1) that certain *Senior Secured Superpriority Debtor-in-Possession Term Loan Credit Agreement*, to be dated as of the closing date of the DIP Facility (the "Closing Date") (as may be amended, restated, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms hereof and thereof, the "DIP Credit Agreement"), among the Borrower, the Guarantors, the DIP Lenders and Wilmington Savings Fund Society, FSB ("WSFS"), as the administrative agent and collateral agent (collectively, solely in such capacities, the "DIP Facility Agent," and, together with the DIP Lenders, the "DIP Secured Parties"), substantially in the form attached hereto as **Exhibit 1** and (2) any other agreements, instruments, pledge agreements, mortgages, guarantees, security agreements, intellectual property security agreements, control agreements, notes and other Loan Documents (as defined in the DIP Credit Agreement) and documents related thereto (as each document may be amended, restated, supplemented, or otherwise modified from time to time in accordance with the terms hereof and thereof, collectively with the DIP Credit Agreement,

2

the "DIP Documents") and (b) perform their respective obligations under the DIP Documents and all such other and further acts as may be necessary, appropriate, or desirable in connection with the DIP Documents;

(iii)    authorization for the Credit Parties (a) upon entry of this Interim Order to incur in a single draw on the Closing Date New Money DIP Loans in an aggregate principal amount of up to $10.00 million (the "Initial Draw Amount") comprising (1) $8,461,538.00 of DIP New Money 1L Loans and (2) $1,538,462 of DIP New Money 2L Loans (collectively, the "Initial DIP New Money Loans") and (b) subject to the Court's approval as may be set forth in the Final Order (as defined below): (1) to incur a single draw of New Money DIP Loans in an aggregate principal amount of up to $3.00 million comprising (A) $2,538,462 of DIP New Money 1L Loans and (B) $461,538 of DIP New Money 2L Loans (collectively, the "Delayed Draw Loans"), which amounts for the avoidance of doubt shall be in addition to the Initial Draw Amount; and (2) to borrow (or to be deemed to borrow), subject to entry of the Final Order, Roll-Up Loans in an aggregate principal amount of up to $20.00 million, in each case subject to the terms and conditions set forth in the DIP Documents, this Interim Order, and the Final Order;

(iv)    authorization for the Credit Parties, upon entry of the Final Order, to use the Roll-Up Loans to (or be deemed to) refinance and discharge $20.00 million in an aggregate principal amount of Prepetition First Lien Loans held by the DIP 1L Lenders, allocated among the DIP 1L Lenders based on their *pro rata* share of the DIP New Money 1L Commitments (such refinancing, the "Prepetition Debt Refinancing");

(v)    authorization to use the proceeds of the DIP Facility in accordance with this Interim Order and, as applicable, the Final Order (as defined below) and DIP Credit Agreement, including (a) to pay certain costs, fees and expenses related to the Chapter 11 Cases, (b) to fund the Carve-Out in accordance with the terms of the DIP Orders and (c) to fund the working capital needs and expenditures of the Debtors during the Chapter 11 Cases, including the Prepetition Debt Refinancing;

(vi)    subject to the restrictions set forth in the DIP Documents and this Interim Order, authorization for the Credit Parties to continue to use Cash Collateral (as defined below) and all other Prepetition Collateral (as defined below) in which any of the Prepetition Secured Parties (as defined below) has an interest, and to grant adequate protection to the Prepetition Secured Parties with respect to, *inter alia*, such use of Cash Collateral and other Prepetition Collateral;

(vii)    authorization for the Credit Parties to pay, on a final and irrevocable basis principal, interest, fees, expenses and other amounts payable under the DIP Documents as such become earned, due and payable, including, but not limited to, any upfront fees, original issue discount, backstop fees, commitment premiums, closing date fees, exit fees, prepayment fees,

agency fees, administrative agent's fees, the Carve-Out, the reasonable fees and disbursements of the DIP Facility Agent's and DIP Lenders' attorneys, advisors, accountants, appraisers, bankers, and other consultants, all to the extent provided in, and in accordance with, the DIP Documents;

(viii)   approval of certain stipulations by the Debtors with respect to the Prepetition Credit Documents and the liens and security interests arising therefrom;

(ix)   subject and subordinate in all respects to the Carve-Out, granting to the DIP Secured Parties of an allowed superpriority claim pursuant to section 364(c)(1) of the Bankruptcy Code payable from, and having recourse to, all prepetition and postpetition property of the Credit Parties' estates and all proceeds thereof (other than Avoidance Actions[3], but, upon entry of the Final Order, including Avoidance Proceeds[4]);

(x)   granting to the DIP Facility Agent (for the benefit of the DIP Secured Parties) liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code and priming liens pursuant to section 364(d) of the Bankruptcy Code on all prepetition and postpetition property of the Credit Parties' estates and all proceeds thereof (other than the Avoidance Actions, but including, upon entry of the Final Order, any Avoidance Proceeds), in each case subject and subordinate in all respect to the Carve-Out and the Prepetition Permitted Prior Liens (as defined below);

(xi)   subject to the entry of the Final Order, a waiver of (a) the Debtors' right to surcharge the Prepetition Collateral and the DIP Collateral (each as defined below) (together, the "Collateral") pursuant to section 506(c) of the Bankruptcy Code, and (b) any right of the Debtors under the "equities of the case" exception under section 552(b) of the Bankruptcy Code;

(xii)   modification of the automatic stay to the extent set forth herein and in the DIP Documents;

(xiii)   scheduling of a final hearing (the "Final Hearing") to consider final approval of the DIP Facility and use of Cash Collateral pursuant to a proposed final order (the "Final Order"), as set forth in the Motion and the DIP Documents filed with this Court; and

(xiv)   related relief.

The Court having considered the interim relief requested in the Motion, the exhibits

attached thereto, the Sprung Declaration, the Spitzer Declaration, the First Day Declaration, the

---

[3]   "Avoidance Actions" means, collectively, claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code.

[4]   "Avoidance Proceeds" means any proceeds or property recovered, unencumbered or otherwise, from Avoidance Actions, whether by judgment, settlement or otherwise.

DIP Documents, and the evidence submitted and arguments made at the interim hearing held on February 19, 2020 (the "Interim Hearing"); and due and sufficient notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Local Rules; and the Interim Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtors and their estates, and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP Documents is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor.

**IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED,** that:

1.      *Disposition.*  The relief requested in the Motion is GRANTED ON AN INTERIM BASIS in accordance with the terms of this Interim Order.  Any and all objections to the Motion with respect to the entry of this Interim Order that have not been withdrawn, waived, settled, or resolved and all reservations of rights included therein, are hereby denied and overruled on the merits.  This Interim Order shall become effective immediately upon its entry.

2.      *Petition Date*.  On February 18, 2020 (the "Petition Date"), each Debtor filed a voluntary petition (each, a "Petition") under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (this "Court").

3.     *Debtors in Possession.*   The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in any of the Chapter 11 Cases.

4.     *Jurisdiction.*   This Court has core jurisdiction over the Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(a)–(b) and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  Venue for the Chapter 11 Cases and proceedings on the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5.     *Committee Formation.*   As of the date hereof, the United States Trustee for the District of Delaware (the "U.S. Trustee") has not appointed an official committee of unsecured creditors in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

6.     *Notice*.   Appropriate notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, and no other or further notice of the Motion or the entry of this Interim Order shall be required.  The interim relief granted herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing.

7.     *Debtors' Stipulations*.   Without prejudice to the rights of any party in interest and subject to the limitations thereon contained in paragraph 27 below, the Debtors admit, stipulate and agree that:

(a)     (i) pursuant to that certain First Lien Credit Agreement, dated as of March 1, 2017 (as may be amended, restated, amended and restated, modified or supplemented from time to time, the "Prepetition First Lien Credit Agreement" and, collectively with the Security

Agreement (as defined in the Prepetition First Lien Credit Agreement), the other Loan Documents (as defined in the Prepetition First Lien Credit Agreement) and any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, waived or otherwise modified from time to time, collectively, the "Prepetition First Lien Credit Documents"), among (A) the Prepetition Borrower,[5] as borrower, (B) Holdings, (C) the Guarantors, as guarantor subsidiaries, (D) WSFS (as successor to BNP Paribas ("BNP")), as administrative agent and collateral agent (solely in such capacities, the "Prepetition First Lien Agent"), (E) the Revolving Lenders (as defined in the Prepetition First Lien Credit Agreement) party thereto who provided revolving loans (the "Prepetition First Lien Revolving Lenders"), (F) the Term Lenders (as defined in the Prepetition First Lien Credit Agreement) party thereto who provided term loans (the "Prepetition First Lien Term Lenders" and, together with the Prepetition First Lien Revolving Lenders, the "Prepetition First Lien Lenders"; the Prepetition First Lien Lenders, together with the Prepetition First Lien Agent and all other holders of Prepetition First Lien Debt (as defined below), the "Prepetition First Lien Secured Parties"), the Prepetition First Lien Revolving Lenders provided revolving credit and other financial accommodations to the Prepetition Borrower, the Prepetition First Lien Term Lenders provided term loans to the Prepetition Borrower, and the Prepetition Guarantors[6] guaranteed on a joint and several basis the obligations of the Prepetition Borrower; (ii) pursuant to that certain Second Lien Credit Agreement, dated as of March 1, 2017 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "Prepetition Second Lien Credit Agreement" and, collectively with

---

[5] "Prepetition Borrower" means the Borrower in its capacity as borrower under the Prepetition First Lien Credit Agreement and Prepetition Second Lien Credit Agreement, collectively or individually as the context requires.

[6] "Prepetition Guarantors" means the Guarantors in their capacity as guarantors under the Prepetition First Lien Credit Agreement and Prepetition Second Lien Credit Agreement, collectively or individually as the context requires.

the Security Agreement (as defined in the Prepetition Second Lien Credit Agreement), the other Loan Documents (as defined in the Prepetition Second Lien Credit Agreement) and any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, waived or otherwise modified from time to time, the "Prepetition Second Lien Credit Documents", and together with the Prepetition First Lien Credit Documents, the "Prepetition Credit Documents"), among (A) the Prepetition Borrower, as borrower, (B) Holdings, (C) the Guarantors, as guarantor subsidiaries, (D) Oaktree Fund Administration, LLC ("Oaktree") (as successor to BNP), as administrative agent and collateral agent (solely in such capacities, the "Prepetition Second Lien Agent" and, together with the Prepetition First Lien Agent, the "Prepetition Agents"), (E) the lenders party thereto (the "Prepetition Second Lien Lenders," and (x) together with the Prepetition First Lien Lenders, the "Prepetition Secured Lenders" and (y) collectively with the Prepetition Second Lien Agent and all other holders of Prepetition Second Lien Debt (as defined below), the "Prepetition Second Lien Secured Parties" and, together with the Prepetition First Lien Secured Parties, the "Prepetition Secured Parties"), the Prepetition Second Lien Lenders provided term loans to the Prepetition Borrower and the Prepetition Guarantors guaranteed on a joint and several basis the obligations of the Prepetition Borrower;

(b)    (i) as of the Petition Date: (A) the Prepetition Borrower and the Prepetition Guarantors were justly and lawfully indebted and liable to the Prepetition First Lien Secured Parties without defense, challenge, objection, claim, counterclaim of any kind, in the aggregate principal amount of not less than $164,375,000 consisting of (x) $20,000,000 in outstanding principal amount of Revolving Loans (as defined in the Prepetition First Lien Credit Agreement) and (y) $ 144,375,000 outstanding principal amount of Term Loans (as defined in the Prepetition

8

First Lien Credit Agreement), which loans were made by the Prepetition First Lien Lenders, pursuant to, and in accordance with the terms of, the Prepetition First Lien Credit Documents, plus accrued and unpaid interest thereon and fees, expenses (including any attorneys', accountants', and financial advisors' fees and expenses, in each case, that are chargeable or reimbursable under the Prepetition First Lien Credit Documents), costs, charges, indemnities and other obligations incurred in connection therewith as provided in the Prepetition First Lien Credit Documents (collectively, the "Prepetition First Lien Debt"), which Prepetition First Lien Debt has been guaranteed on a joint and several basis by all of the Prepetition Guarantors and (B) the Prepetition Borrower and the Prepetition Guarantors were justly and lawfully indebted and liable to the Prepetition Second Lien Secured Parties without defense, challenge, objection, claim, counterclaim or offset of any kind, in the aggregate principal amount of not less than $45,000,000 in respect of loans made by the Prepetition Second Lien Lenders pursuant to, and in accordance with the terms of, the Prepetition Second Lien Credit Documents, plus accrued and unpaid interest thereon and fees, expenses (including any attorneys', accountants', and financial advisors' fees and expenses, in each case, that are chargeable or reimbursable under the Prepetition Second Lien Credit Documents), costs, charges, indemnities and other obligations incurred in connection therewith as provided in the Prepetition Second Lien Credit Documents (collectively, the "Prepetition Second Lien Debt" and, together with the Prepetition First Lien Debt, the "Prepetition Debt"), which Prepetition Second Lien Debt has been guaranteed on a joint and several basis by all of the Prepetition Guarantors;

(c)    (i) the Prepetition Debt constitutes the legal, valid, binding, and non-avoidable obligations of the Prepetition Borrower and the Prepetition Guarantors, enforceable in accordance with its terms (other than in respect of the stay of enforcement arising from section

362 of the Bankruptcy Code) and (ii) no portion of the Prepetition Debt or any payment made to the Prepetition Secured Parties or applied to or paid on account of the obligations owing under the Prepetition Credit Documents prior to the Petition Date is subject to any contest, attack, rejection, recovery, reduction, defense, counterclaim, subordination, recharacterization, avoidance or other claim (as such term is used in the Bankruptcy Code, a "<u>Claim</u>"), cause of action or other challenge of any nature under the Bankruptcy Code or applicable non-bankruptcy law;

(d)    as of the Petition Date, the liens and security interests granted to the Prepetition First Lien Secured Parties (the "<u>Prepetition First Lien Credit Facility Liens</u>") pursuant to and in connection with the Prepetition First Lien Credit Documents are: (i) valid, binding, properly perfected, enforceable, first priority liens and security interests in the Prepetition Collateral;[7] (ii) not subject to avoidance, recharacterization, subordination (whether equitable, contractual, or otherwise), recovery, attack, disgorgement, effect, rejection, reduction, disallowance, impairment, effect, counterclaim, crossclaim, defense or Claim under the Bankruptcy Code or applicable non-bankruptcy law; and (iii) subject and subordinate only to certain liens permitted by the Prepetition First Lien Credit Documents, solely to the extent any such permitted liens were valid, binding, enforceable, properly perfected, non-avoidable and *pari passu* or senior in priority to the Prepetition First Lien Credit Facility Liens (the "<u>Prepetition First Lien Permitted Prior Liens</u>");

(e)    as of the Petition Date, the liens and security interests granted to the Prepetition Second Lien Secured Parties (the "<u>Prepetition Second Lien Credit Facility Liens</u>" and, together with the Prepetition First Lien Credit Facility Liens, the "<u>Prepetition Liens</u>") pursuant to and in connection with the Prepetition Second Lien Credit Documents are: (i) valid, binding,

---

[7]    "<u>Prepetition Collateral</u>" means "Collateral" as defined in the Prepetition First Lien Credit Agreement.

properly perfected, enforceable, second priority liens and security interests in the Prepetition Collateral; (ii) not subject to avoidance, recharacterization, subordination (whether equitable, contractual, or otherwise), recovery, attack, disgorgement, effect, rejection, reduction, disallowance, impairment, counterclaim, crossclaim, offset, recoupment, defense or Claim under the Bankruptcy Code or applicable non-bankruptcy law; and (iii) subject and subordinate only to (A) the liens and security interests in favor of the Prepetition First Lien Secured Parties and (B) certain other liens permitted by the Prepetition Credit Documents, solely to the extent any such permitted liens were valid, binding, enforceable, properly perfected, non-avoidable and *pari passu* or senior in priority to the Prepetition Second Lien Credit Facility Liens (the "Prepetition Second Lien Permitted Prior Liens" and, together with the Prepetition First Lien Permitted Prior Liens, the "Prepetition Permitted Prior Liens");

(f)      as of the Petition Date, except for the Prepetition Permitted Prior Liens, there were no liens on or security interests in the Prepetition Collateral other than the Prepetition Liens.  Nothing herein shall constitute a finding or ruling by this Court that any alleged Prepetition Permitted Prior Lien is valid, senior, enforceable, prior, perfected, or non-avoidable.  Moreover, nothing herein shall prejudice the rights of any party-in-interest, including, but not limited to, the Debtors, the DIP Facility Agent, the DIP Lenders, the Prepetition Secured Parties, or a Creditors' Committee (if appointed), to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Prepetition Permitted Prior Lien, subject to paragraph 27 hereof.  The right of a seller of goods to reclaim such goods under section 546(c) of the Bankruptcy Code is not a Prepetition Permitted Prior Lien and is expressly subject to the Prepetition Liens and DIP Liens;

(g)      none of the Prepetition Secured Parties control the Debtors or their properties or operations, have authority to determine the manner in which any Debtor's operations are conducted or are control persons or insiders of the Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to or arising from the Prepetition Credit Documents;

(h)      no claims, counterclaims, objections, defenses, challenges or causes of action exist against, or with respect to, the Prepetition First Lien Secured Parties or the Prepetition Second Lien Secured Parties or any of their respective affiliates, agents, subsidiaries, partners, controlling persons, agents, attorneys, advisors, professionals, officers, directors and employees, whether arising under applicable state or federal law (including, without limitation, any recharacterization or other equitable relief that might otherwise impair the aforementioned parties or their interest in the Prepetition Collateral, subordination, avoidance or other claims, including any claims or causes of action arising under or pursuant to sections 105, 502(d), 510, 542 through 553(b) or 724(a) of the Bankruptcy Code), in connection with or arising under any Prepetition First Lien Credit Documents, Prepetition Second Lien Credit Documents or the transactions contemplated thereunder, the Prepetition First Lien Debt, Prepetition First Lien Credit Facility Liens, the Prepetition Second Lien Debt or the Prepetition Second Lien Credit Facility Liens, including without limitation, any right to assert any disgorgement or recovery; and the Debtors and their estates hereby release and discharge any and all such claims, counterclaims, objections, defenses, set-off rights, challenges and causes of actions;

(i)      the Debtors, solely for themselves and not any other parties-in-interest, hereby absolutely, irrevocably, and unconditionally release and forever discharge and acquit the DIP Secured Parties, the Prepetition First Lien Secured Parties, the Prepetition Second Lien

12

Secured Parties and their respective Representatives (as defined below), in each case, solely in their capacities as such (collectively, the "Released Parties"), from any and all obligations and liabilities to the Debtors (and their successors and assigns) and from any and all claims, controversies, disputes, obligations, counterclaims, demands, debts, damages, expenses (including, without limitation, attorneys' and financial advisors' fees and expenses), liens, accounts, contracts, liabilities, actions and causes of action arising prior to the Petition Date (collectively, the "Released Claims") of any kind, nature or description, whether known or unknown, foreseen or unforeseen, matured or unmatured, accrued or unaccrued, or liquidated or unliquidated, arising in law or equity or upon contract or tort or under any state or federal law or otherwise, arising out of or related to (as applicable) the DIP Facility, the DIP Documents, the Prepetition First Lien Credit Documents, the Prepetition Second Lien Credit Documents, the obligations owing and the financial obligations made thereunder, the negotiation thereof and the transactions reflected thereby, and the obligations and financial obligations made thereunder, in each case that the Debtors at any time had, now have or may have, or that their successors or assigns hereafter can or may have against any of the Released Parties for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time on or prior to the date of this Interim Order, whether such Released Claims are matured, contingent, liquidated, unliquidated, unmatured, known, unknown or otherwise; *provided*, that, for the avoidance of doubt, the foregoing release shall not constitute a release of any rights of the Debtors arising under the DIP Documents;

(j)     that certain Intercreditor Agreement, dated as of March 1, 2017 (as amended, supplemented, restated or otherwise modified and as in effect on the Petition Date, the "Prepetition Intercreditor Agreement") among WSFS (as successor to BNP), as Existing First Priority Representative (as defined therein) and Oaktree (as successor to BNP), as Existing Second Lien

Representative (as defined therein) which governs, among other things, the relative priorities of the Prepetition Liens in respect of the applicable Prepetition Collateral, is binding and enforceable against the Prepetition Borrower, the Prepetition Guarantors and the Prepetition Secured Parties in accordance with its terms, and the Prepetition Borrower, the Prepetition Guarantors and the Prepetition Secured Parties are not entitled to take any action that would be contrary to the provisions thereof; and

(k)     all cash, securities or other property of the Credit Parties (and the proceeds therefrom) as of the Petition Date, including, without limitation, all cash, securities or other property (and the proceeds therefrom) and other amounts on deposit or maintained by the Credit Parties in any account or accounts (collectively, the "Depository Institutions") were subject to any applicable rights of set-off under the Prepetition Credit Documents and applicable law, for the benefit of the Prepetition Secured Parties.  All cash proceeds of the Prepetition Collateral (including cash on deposit at the Depository Institutions as of the Petition Date, securities or other property, whether subject to control agreements or otherwise, in each case that constitutes Prepetition Collateral) are "cash collateral" of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral").

8.     *Findings Regarding the DIP Financing and Use of Cash Collateral.*

(a)     Good and sufficient cause has been shown for the entry of this Interim Order and for authorization of the Credit Parties to obtain financing pursuant to the DIP Facility.  It is in the best interests of the Debtors and their estates to be allowed to establish and implement the DIP Facility contemplated by the DIP Documents.

(b)     The Credit Parties have an immediate need to obtain the DIP Financing and to continue to use the Prepetition Collateral (including Cash Collateral) in order to, among other

14

things, avoid the liquidation of these estates, and:  (i) permit the orderly continuation of the operation of their businesses, (ii) maintain business relationships with customers, vendors and suppliers, (iii) make payroll, (iv) satisfy other working capital and operational needs, (v) pay professional fees, expenses, and obligations benefitting from the Carve-Out; and (vi) pay costs, fees, and expenses associated with or payable under the DIP Credit Agreement, under the terms of this Interim Order or under the terms of the DIP Documents.  The Credit Parties' use of Cash Collateral alone would be insufficient to meet the Debtors' cash disbursement needs during the period of effectiveness of this Interim Order.  The access by the Credit Parties to sufficient working capital and liquidity through the use of Cash Collateral and other Prepetition Collateral, incurrence of new indebtedness under the DIP Documents and other financial accommodations provided under the DIP Documents are necessary and vital to avoid an immediate liquidation and for the preservation and maintenance of the going concern values of the Credit Parties and to a successful restructuring of the Credit Parties.  The terms of the proposed DIP Facility pursuant to the DIP Documents and this Interim Order are fair and reasonable, reflect each Credit Parties' exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration.

(c)    The Credit Parties are unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Credit Parties are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without the Credit Parties granting to the DIP Secured Parties, subject and subordinate in all respects to the Carve-Out, the DIP Liens and the DIP Superpriority Claims (as defined below) and, subject to the Carve-Out,

incurring the Adequate Protection Obligations (as defined below), in each case, under the terms and conditions set forth in this Interim Order and in the DIP Documents.

(d)     Based on the Motion, the declarations filed in support of the Motion, and the record presented to the Court at the Interim Hearing, (i) the terms of the DIP Financing, (ii) the terms of the adequate protection granted to the Prepetition Secured Parties as provided in paragraph 18 of this Interim Order (the "Adequate Protection") and (iii) the terms on which the Credit Parties may continue to use the Prepetition Collateral (including Cash Collateral), in each case pursuant to this Interim Order and the DIP Documents, are in each case fair and reasonable, reflect the Credit Parties' exercise of prudent business judgment consistent with their fiduciary duties, constitute reasonably equivalent value and fair consideration, and represent the best financing available.  The adequate protection provided in this Interim Order and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code.

(e)     To the extent such consent is required, the Prepetition Secured Parties have consented or are deemed under the Prepetition Intercreditor Agreement to have consented to the Credit Parties' use of Cash Collateral and the other Prepetition Collateral, and the Credit Parties' entry into the DIP Documents, in accordance with and subject to the terms and conditions in this Interim Order and the DIP Documents and the priming liens granted to the DIP Secured Parties.

(f)     The DIP Facility, the Adequate Protection and the use of the Prepetition Collateral (including Cash Collateral) have been negotiated in good faith and at arm's length among the Credit Parties, the Prepetition Secured Parties and the DIP Secured Parties, and their respective advisors, and all of the Credit Parties' obligations and indebtedness arising under, in respect of, or in connection with, the DIP Facility and the DIP Documents, including, without limitation: all loans made to and guarantees issued by the Credit Parties pursuant to the DIP

Documents and any DIP Obligations shall be deemed to have been extended by the DIP Facility Agent and the DIP Lenders and their respective affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Secured Parties and the Prepetition Secured Parties (and the successors and assigns thereof) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(g)     The Prepetition Secured Parties are entitled to the Adequate Protection provided in this Interim Order as and to the extent set forth herein pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code.  Based on the Motion, the declarations filed in support of the Motion, and the record presented to the Court at the Interim Hearing, the terms of the proposed Adequate Protection arrangements and of the use of the Prepetition Collateral (including Cash Collateral) are fair and reasonable, reflect the Credit Parties' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of the Prepetition Collateral (including Cash Collateral); *provided* that nothing in this Interim Order or the DIP Documents shall (x) be construed as the affirmative consent by any of the Prepetition Secured Parties for the use of Cash Collateral other than on the terms set forth in this Interim Order and in the context of the DIP Financing authorized by this Interim Order, (y) be construed as a consent by any Prepetition Secured Party to the terms of any other financing or any other lien encumbering the Prepetition Collateral (whether senior or junior) except to the extent permitted by the DIP Documents or (z) prejudice, limit or otherwise impair the rights of any of the Prepetition Secured Parties, subject to any applicable provisions of the Prepetition Intercreditor Agreement, to seek modification of the grant of adequate protection provided hereby so as to provide new, different

17

or additional adequate protection or assert the interests of any of the Prepetition Secured Parties, and without prejudice to the right of the Debtors and any other party in interest's rights to contest such modification.

(h)     The Debtors have prepared and delivered to the DIP Facility Agent an initial thirteen (13) week budget (the "Initial DIP Budget"), a copy of which is attached hereto as **Exhibit 2**.  The Initial DIP Budget reflects the Debtors' anticipated cash receipts, operating disbursements (to be defined as the sum of payroll, inventory purchase, payables, capital expenditures and income taxes), operating cash flow, non-operating disbursements (including restructuring fees and principal and interest) and net cash flow for such thirteen (13) week period. The Initial DIP Budget may be modified, amended and updated from time to time in accordance with the DIP Credit Agreement and once approved as being in form and substance reasonably satisfactory to the Required DIP Lenders,[8] shall supplement and replace the Initial DIP Budget (the Initial DIP Budget and each subsequent approved budget, shall constitute without duplication, an "Approved Budget").  The Debtors believe that the Initial DIP Budget is reasonable under the facts and circumstances.  The DIP Facility Agent and the DIP Lenders are relying, in part, upon the Debtors' agreement to comply with the Approved Budget, the other DIP Documents, and this Interim Order in determining to enter into the postpetition financing arrangements provided for in this Interim Order.

(i)     The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the Local Rules and good cause has been shown for the immediate entry of this Interim Order.  For the reasons set forth in the Motion, the declarations filed in support of the Motion, and the record presented to the Court at the Interim

---

[8]     "Required DIP Lenders" means "Required Lenders" as defined in the DIP Credit Agreement.

Hearing, absent granting the relief set forth in this Interim Order, the Credit Parties' estates would face significant business disruption resulting in immediate and irreparable harm. Consummation of the DIP Facility and the use of Prepetition Collateral (including Cash Collateral), in accordance with this Interim Order and the DIP Documents are therefore in the best interests of the Credit Parties, their estates and their creditors.

(j)    The Motion and this Interim Order comply with the requirements of, and to the extent applicable constitute a waiver of certain requirements of, Local Bankruptcy Rule 4001-2.

9.    *Authorization of the DIP Facility and the DIP Documents.*

(a)    The Credit Parties are hereby authorized to execute, enter into and perform all obligations under the DIP Documents and to take any other and further acts related to the execution, delivery and performance of the DIP Documents. The DIP Documents and this Interim Order shall govern the financial and credit accommodations to be provided to the Debtors by the DIP Lenders in connection with the DIP Financing. The Borrower is hereby authorized to forthwith borrow money pursuant to the DIP Credit Agreement, and the Guarantors are hereby authorized to guarantee the Credit Parties' obligations with respect to such borrowings, in each case up to an aggregate principal amount equal to $10.00 million of Initial DIP New Money Loans, together with applicable interest, protective advances, expenses, fees and other charges payable in connection with the DIP Facility, subject to any limitations on borrowing under the DIP Documents (including the limitation of a single draw), which shall be used for all purposes permitted under the DIP Documents and this Interim Order, including, without limitation: (1) to provide working capital and to pay for other general corporate purposes and (2) to pay interest and

make adequate protection and other payments in accordance with this Interim Order and DIP Documents.

(b)    In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages, deeds of trust and financing statements), and to pay all fees that may be reasonably required or necessary for the Credit Parties to implement the terms of, performance of their obligations under or effectuate the purposes of and transactions contemplated by this Interim Order or the DIP Financing, including, without limitation:

(i)    the execution and delivery of, and performance under, one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each case, in such form as the Credit Parties and the DIP Facility Agent, acting at the direction of the Required DIP Lenders may agree, it being understood that no further approval of the Court shall be required for authorizations, amendments, waivers, consents or other modifications to and under the DIP Documents (and any fees and other expenses (including any attorneys', accountants', appraisers' and financial advisors' fees), amounts, charges, costs, indemnities and other obligations paid in connection therewith) that do not (A) shorten the maturity of the extensions of credit thereunder or increase the aggregate commitments or the rate of interest payable thereunder, (B) increase existing fees or add new fees thereunder (excluding, for the avoidance of doubt, any amendment, consent or wavier fee) or (C) shorten the case milestones set forth in Section 6.19 of the DIP Credit Agreement; *provided*, for the avoidance of doubt, updates and supplements to the Approved Budget required to be delivered by the Credit Parties under the DIP Documents shall not be considered amendments or modifications to the Approved Budget or the DIP Documents.

The foregoing shall be without prejudice to the Loan Parties' right to seek approval from the Court of any material modification or amendment on an expedited basis;

(ii)      upon entry of this Interim Order, the payment to the DIP Facility Agent and/or the DIP Lenders, as the case may be, of all fees, including, without limitation, any closing date fee, upfront fee, commitment fee, original issue discount, backstop fee, exit fee, prepayment fee or agency fee (which fees, in each case, shall be, and shall be deemed to have been, approved upon entry of this Interim Order, and which fees shall not be subject to any challenge, contest, attack, rejection, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action or other challenge of any nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise) and any amounts due (or that may become due) in respect of the indemnification obligations, in each case referred to in the DIP Credit Agreement (and in any separate letter agreements between any or all Credit Parties, on the one hand, and any of the DIP Facility Agent and/or DIP Lenders, on the other, in connection with the DIP Facility) and the costs and expenses as may be due from time to time, including, without limitation, fees and expenses of the following professionals retained by the DIP Facility Agent or DIP Lenders: (A) Wilmer Cutler Pickering Hale and Dorr LLP ("Wilmer Hale"), counsel to the DIP Facility Agent, (B) one bankruptcy counsel for the DIP Facility Agent, (C) solely to the extent necessary to exercise its rights and fulfill its obligations under the DIP Documents, one counsel to the DIP Facility Agent in each local jurisdiction, (D) Davis Polk & Wardwell LLP ("Davis Polk"), counsel to the ad hoc group of certain Prepetition First Lien Lenders and DIP Lenders (the "Ad Hoc Group of First Lien Lenders"); (E) Morris, Nichols, Arsht & Tunnell LLP ("Morris Nichols"), as local counsel for the Ad Hoc Group of First Lien Lenders, (F) M-III Advisory Partners, LP ("M-III"), financial advisor to the Ad Hoc Group of First Lien Lenders,

(G) any other advisors retained by the Ad Hoc Group of First Lien Lenders, (H) Stroock & Stroock & Levan LLP ("Stroock"), counsel to the DIP 2L Lender, (I) Young Conaway Stargatt & Taylor, LLP ("Young Conaway"), local counsel to the DIP 2L Lender, in each case of the foregoing (A)–(I), as provided for in the DIP Documents (the "DIP Fees and Expenses"), without the need to file retention motions or fee applications or to provide notice to any party; and

(iii)    the performance of all other acts required under or in connection with the DIP Documents, including the granting of the DIP Liens and DIP Superpriority Claims and perfection of the DIP Liens and DIP Superpriority Claims as permitted herein and therein.

(c)    Subject to the terms and conditions of this Interim Order, the DIP Facility Agent is hereby authorized and directed to execute, enter into, and perform all rights and obligations under the DIP Documents.

(d)    Upon execution and delivery of the DIP Documents, each of the DIP Documents shall constitute valid, binding and non-avoidable obligations of the Credit Parties, fully enforceable against each Credit Party in accordance with the terms of the DIP Documents and this Interim Order.  No obligation, payment, transfer or grant of security under the DIP Documents or this Interim Order to the DIP Facility Agent (including its Representatives) and/or the DIP Lenders (including their Representatives) shall be stayed, restrained, voidable or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 544, 548 or 549 of the Bankruptcy Code, any applicable Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or other similar state statute or common law), or subject to any defense, reduction, recoupment, recharacterization, subordination, disallowance, impairment, cross-claim, claim or counterclaim.

(e)    No DIP Lender or DIP Facility Agent shall have any obligation or responsibility to monitor any Loan Party's use of the DIP Loans, and each DIP Lender or DIP Facility Agent may rely upon each Loan Party's representations that the amount of DIP Loans requested at any time and the use thereof are in accordance with the requirements of this Interim Order, the DIP Documents, and Bankruptcy Rule 4001(c)(2).

10.    *Carve-Out*

(a)    Notwithstanding anything to the contrary herein, the Debtors' obligations to the DIP Secured Parties and Prepetition Secured Parties and the liens, security interests and superpriority claims granted herein and/or under the Prepetition Credit Documents and/or DIP Documents, including the DIP Liens, DIP Priming Liens, the DIP Superpriority Claims, the First Lien Adequate Protection Liens, and the First Lien 507(b) Claims (in each case, as defined herein), shall be subject and subordinate in all respects to the Carve-Out.

(b)    As used in this Interim Order, the "Carve-Out" shall mean the sum, without duplication, of the following: (i) all fees required to be paid to the clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses incurred by a chapter 7 trustee under section 726(b) of the Bankruptcy Code in an amount not to exceed $50,000 (without regard to the notice set forth in (iii) below); and (iii) to the extent allowed at any time or from time to time, whether by interim or final compensation order or any other order of the Bankruptcy Court, all unpaid fees, costs, and expenses (the "Accrued Professional Compensation") incurred or accrued by persons or firms retained by the Debtors pursuant to section 327, 328 or 363 of the Bankruptcy Code (collectively, the "Retained Professionals") and any Creditors' Committee (the "Committee Professionals" and, together with the Debtor

Professionals, the "Professional Persons") appointed in the Chapter 11 Cases pursuant to section 328 and 1103 of the Bankruptcy Code, (x) at any time before or on the first day following delivery by the DIP Facility Agent of a Carve-Out Trigger Notice (as defined below) whether allowed by the Court prior to or after the date on which the Carve-Out Trigger Notice is delivered, plus (y) Accrued Professional Compensation incurred after the first business day following delivery by the DIP Facility Agent of a Carve-Out Trigger Notice in an amount not to exceed $1,000,000 (the "Post-Carve-Out Trigger Notice Cap"); *provided* that under no circumstances shall any success, completion, or similar fees be payable from the Carve-Out (the amounts set forth in clauses (x) and (y), collectively, the "Carve-Out Amount").   For purposes of the foregoing, "Carve-Out Trigger Notice" shall mean a written notice delivered by the DIP Facility Agent to counsel of record for the Debtors and the Committee Professionals stating that an Event of Default (as defined in the DIP Credit Agreement) has occurred and is continuing under the applicable DIP Documents.

(c)     The Debtors shall be authorized and permitted to establish and fund a segregated deposit account that shall not be subject to the control of the DIP Secured Parties or Prepetition Secured Parties (the "Funded Reserve Account") to satisfy the Accrued Professional Compensation included within the Carve-Out.  Upon the Closing Date, the Debtors are authorized and directed to deposit cash in the Funded Reserve Account in an amount equal to the aggregate amount of professional fees of Professional Persons projected in the Initial DIP Budget to accrue from the Petition Date through the Plan Effective Date (as defined in the DIP Credit Agreement). To the extent the amount of Accrued Professional Compensation exceeds the amount on deposit in the Funded Reserve Account prior to the delivery of a Carve-Out Trigger Notice, the Debtors shall be authorized to deposit cash on hand as of such date and any available cash thereafter held by any Debtor into the Funded Reserve Account in an amount equal to such excess.  After the

24

delivery of a Carve-Out Trigger Notice, the Debtors shall be authorized to deposit cash on hand into the Funded Reserve Account only in an amount equal to such excess, if any, plus the Post-Carve Out Trigger Notice Cap.  The funds on deposit in the Funded Reserve Account shall be available to satisfy the obligations benefiting from the Carve-Out, and the DIP Secured Parties (i) shall not sweep or foreclose on cash of the Debtors in the Funded Reserve Account or necessary to fund the Funded Reserve Account in accordance with the previous sentence, (ii) shall follow the instructions of the Debtors with respect to the disbursement of funds in the Funded Reserve Account consistent with the provisions of this Interim Order and (iii) shall have a security interest upon any residual interest in the Funded Reserve Account available following satisfaction in cash in full of all obligations benefiting from the Carve-Out.  The Debtors shall disburse funds on deposit in the Funded Reserve Account to satisfy the obligations benefiting from the Carve-Out, and shall be permitted to make such disbursement at any time, including following an Event of Default (as defined in the DIP Credit Agreement) or delivery of a Carve-Out Trigger Notice.

(d)     All funds in the Funded Reserve Account shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve-Out set forth above in full and then, to the extent the Funded Reserve Account has not been reduced to zero and all obligations benefiting from the Carve-Out have been satisfied in full, to pay the DIP Facility Agent for the benefit of the DIP Lenders, unless the obligations under the DIP Credit Agreement have been indefeasibly paid in full, in cash, and all commitments contemplated under the DIP Credit Agreement have been terminated, in which case any such excess shall be paid to the Prepetition Secured Parties in accordance with their rights and priorities as of the Petition Date. Further, notwithstanding anything to the contrary in this Interim Order, (i) disbursements by the Debtors from the Funded Reserve Account shall not constitute DIP Loans or increase or reduce the DIP

Obligations, (ii) the failure of the Funded Reserve Account to satisfy in full the Accrued Professional Compensation shall not affect the priority of the Carve-Out, and (iii) in no way shall the Approved Budget, Carve-Out, Post-Carve-Out Trigger Notice Cap or any of the foregoing be construed as a cap or limitation on the amount of the Accrued Professional Compensation due and payable by the Debtors.  For the avoidance of doubt and notwithstanding anything to the contrary in this Interim Order, the DIP Facility or in any Prepetition Credit Documents, the Carve-Out shall be senior to all liens and claims securing the DIP Facility, the Adequate Protection Liens, and the 507(b) Claim, and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations or the Prepetition Debt.

(e)      The Carve-Out Amount shall be reduced on a dollar-for-dollar basis for any unused retainers (if any) held by or on behalf of the Professional Persons as of the delivery of a Carve-Out Trigger Notice.

(f)      None of the DIP Facility Agent, DIP Lenders, or the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with these Chapter 11 Cases or any successor cases under any chapter of the Bankruptcy Code.  Nothing in this Interim Order or otherwise shall be construed to obligate the DIP Facility Agent, the DIP Lenders, or the Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(g)      Any payment or reimbursement made on or after the delivery of a Carve-Out Trigger Notice for services rendered after the business day after delivery of a Carve-Out Trigger Notice in respect of any Accrued Professional Compensation shall permanently reduce the Carve-Out Amount on a dollar-for-dollar basis.

(h)       Notwithstanding the foregoing, (x) the Carve-Out (or any Cash Collateral or other DIP Collateral) shall not include, apply to, or be available for any fees or expenses incurred by any party (including Professional Persons) in connection with (a) the investigation, initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation, or assertions of any defense or counterclaim, against any of the DIP Secured Parties or the Prepetition Secured Parties, each in such capacity, and their respective agents, attorneys, advisors or representatives (whether in such capacity or otherwise), including challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset to, the obligations and the liens and security interests granted under any of the DIP Documents or Prepetition Credit Documents, including, in each case, without limitation, for lender liability or pursuant to section 105, 506(c), 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; (b) attempts to modify any of the rights granted to the DIP Secured Parties, or the Prepetition Secured Parties; (c) attempts to prevent, hinder or otherwise delay any of the DIP Lenders' or the DIP Facility Agent's assertion, enforcement or realization upon any DIP Collateral or Prepetition Collateral in accordance with the DIP Documents and this Interim Order other than to seek a determination that an Event of Default (as defined in the DIP Credit Agreement) has not occurred or is not continuing; or (d) paying any amount on account of any claims arising before the Petition Date unless such payments are approved by an order of the Court, and (y) prior to the delivery of the Carve-Out Trigger Notice, the Carve-Out shall not be reduced by the payment or incurrence of Professional Fees allowed by the Court prior to the delivery of the Carve-Out Trigger Notice.

(i)       Nothing herein shall be construed to (a) impair the ability of any party to object to any of the fees, expenses, reimbursement or compensation of any professionals, or

(b) alter any requirement that a Professional Person to file and serve fee applications or otherwise comply with the Bankruptcy Code, Bankruptcy Rules or Local Rules of this Court relating to payment of fees and reimbursement of expenses of Professional Persons, or with any interim compensation order or retention order entered by this Court.

11.    *DIP Superpriority Claims*.  Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed superpriority administrative expense claims against the Credit Parties on a joint and several basis (without the need to file any proof of claim) with priority over any and all claims against each of the Credit Parties, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code and any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 365, 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (including the Adequate Protection Obligations), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims (the "DIP Superpriority Claims") shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which DIP Superpriority Claims shall be payable from and have recourse to all pre- and postpetition property of the Credit Parties and all proceeds thereof (excluding Avoidance Actions but including, subject to entry of the Final Order, Avoidance Proceeds) in accordance with the DIP Credit Agreement and this Interim Order, in each case, subject and subordinate in all respects to the Carve-Out.  The DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.  Subject and subordinate

to the Carve-Out in all respects, the DIP Superpriority Claims shall be senior to the Adequate

Protection 507(b) Claims (as defined below).

12.    *DIP Liens.*

(a)    <u>DIP Liens</u>.  As security for the DIP Obligations, effective and perfected

upon the date of this Interim Order and without the necessity of the execution, recordation or filing

by the Credit Parties or the DIP Facility Agent of mortgages, security agreements (including

intellectual property security agreements), control agreements, pledge agreements, financing

statements or other similar documents or certificates, any notation of certificates of title for a titled

good or the possession or control by the DIP Facility Agent of, or over, any DIP Collateral, the

following security interests and liens are hereby granted to the DIP Facility Agent for its own

benefit and the benefit of the DIP Lenders (all property identified in clauses (i)-(iii) below being

collectively referred to as the "<u>DIP Collateral</u>"),[9] subject and subordinate only to the Carve-Out

(all such liens and security interests granted to the DIP Facility Agent, for its benefit and for the

benefit of the DIP Lenders, pursuant to this Interim Order and the DIP Documents, the "<u>DIP</u>

<u>Liens</u>"):

(i)    <u>Liens on Unencumbered Property</u>.  Pursuant to section 364(c)(2) of

the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior

security interest in and lien upon all tangible and intangible pre- and postpetition property of the

Credit Parties, whether existing on the Petition Date or thereafter acquired, and the proceeds,

products, rents and profits thereof, that, on or as of the Petition Date, is not subject to a valid,

perfected and non-avoidable lien or is subject to a valid and non-avoidable lien in existence as of

---

[9]    Notwithstanding anything to the contrary herein, the DIP Collateral shall not include any Excluded Asset (as defined in the DIP Credit Agreement).

the Petition Date that is perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, including, without limitation, any and all unencumbered cash of the Credit Parties (whether maintained with the DIP Facility Agent or otherwise) and any investment of such cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, fixtures, machinery, equipment, general intangibles, payment intangibles, documents, instruments, securities, investment property, chattel paper, electronic chattel paper, interests in leaseholds, real properties, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, capital stock of subsidiaries and all other interests in capital stock, wherever located, and the proceeds, products, rents and profits of the foregoing, whether arising under section 552(b) of the Bankruptcy Code or otherwise, of all the foregoing (the "Unencumbered Property"), in each case other than the Avoidance Actions (but including Avoidance Proceeds, subject to the entry of the Final Order), but in each case subject and subordinate in all respects to the Carve-Out;

(ii)    Liens Priming Certain Prepetition Secured Parties' Liens.  Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority priming security interest in and lien upon all pre- and postpetition property of the Credit Parties, regardless of where located, regardless of whether or not any liens on such assets are voided, avoided, invalidated, lapsed or unperfected, which security interest and lien shall prime the Prepetition Liens (the "DIP Priming Liens").  Notwithstanding anything herein to the contrary, the DIP Priming Liens shall be (A) subject and subordinate to the Carve-Out in all respects and shall otherwise be junior only to Prepetition Permitted Prior Liens, (B) senior in all respects to the Prepetition Liens, (C) senior to any Adequate Protection Liens and (D) not subordinate to any lien, security interest or mortgage that is avoided and preserved for the benefit

of the Debtors and their estates under section 551 of the Bankruptcy Code.  The Prepetition Liens shall be primed by and made subject and subordinate to the Carve-Out and the DIP Priming Liens;

(iii)     <u>Liens Junior to Certain Other Liens</u>.  Pursuant to section 364(c)(3) of the Bankruptcy Code, and subject and subordinate in all respects to the Carve-Out, a valid, binding, continuing, enforceable, fully-perfected junior security interest in and lien upon all pre- and postpetition property of the Credit Parties that, on or as of the Petition Date, is subject to valid, perfected and non-avoidable senior liens or valid and non-avoidable senior liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, in each case other than the Prepetition Liens; *provided*, that nothing in the foregoing shall limit the rights of the DIP Secured Parties under the DIP Documents to the extent such liens are not permitted thereunder;

(iv)     <u>Liens Senior to Certain Other Liens</u>.  The DIP Liens shall not be (a) subject or subordinate to or made *pari passu* with (A) any lien or security interest that is avoided and preserved for the benefit of the Credit Parties and their estates under section 551 of the Bankruptcy Code, (B) unless otherwise provided for in the DIP Documents or in this Interim Order, any liens or security interests arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit (including any regulatory body), commission, board or court for any liability of the Credit Parties, or (C) any intercompany or affiliate liens of the Credit Parties or security interests of the Credit Parties; or (b) subordinated to or made *pari passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code.

(b)     <u>Automatic Effectiveness of Liens</u>.  The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby vacated and modified to effectuate all of the terms

and provisions of this Interim Order, including to (i) permit the Credit Parties to grant the liens and security interests to the DIP Facility Agent, the other DIP Secured Parties and the Prepetition Secured Parties and (ii) authorize the Credit Parties to pay and the DIP Secured Parties and Prepetition First Lien Secured Parties to retain and apply payments made in accordance with this Interim Order in any such case as is contemplated by this Interim Order and the other DIP Documents.

13.     *Protection of DIP Lenders' Rights.*

(a)     So long as there are any DIP Obligations outstanding or the DIP Lenders have any outstanding Commitments (as defined and used in the DIP Credit Agreement) (the "DIP Commitments") under the DIP Credit Agreement, the Prepetition Secured Parties shall: (i) have no right to and shall take no action to foreclose upon, or recover in connection with, the liens granted thereto pursuant to the Prepetition Credit Documents or this Interim Order, or otherwise seek to exercise or enforce any rights or remedies against such DIP Collateral, including in connection with the Prepetition Liens or the Adequate Protection Liens (as defined below); (ii) be deemed to have consented to any transfer, disposition or sale of, or release of liens on, such DIP Collateral (but not any proceeds of such transfer, disposition or sale to the extent remaining after payment in cash in full of the DIP Obligations and termination of the DIP Commitments), to the extent such transfer, disposition, sale or release is authorized under the DIP Documents; (iii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in such DIP Collateral unless, solely as to this clause (iii), the DIP Facility Agent or the DIP Lenders file financing statements or other documents to perfect the liens granted pursuant to this Interim Order, or as may be required by applicable state law to continue the perfection of valid and non-avoidable

liens or security interests as of the Petition Date; and (iv) at the request of the DIP Facility Agent, deliver or cause to be delivered, at the Credit Parties' cost and expense, any termination statements, releases and/or assignments in favor of the DIP Facility Agent or the DIP Lenders or other documents necessary to effectuate and/or evidence the release, termination and/or assignment of liens on any portion of such DIP Collateral subject to any sale or disposition permitted by the DIP Documents and this Interim Order.

(b)     To the extent any Prepetition Secured Party has possession of any Prepetition Collateral or DIP Collateral or has control with respect to any Prepetition Collateral or DIP Collateral (including deposit accounts), or has been noted as a secured party on any certificate of title for a titled good constituting Prepetition Collateral or DIP Collateral, then such Prepetition Secured Party shall be deemed to maintain such possession or notation or exercise such control as a gratuitous bailee and/or gratuitous agent for perfection for the benefit of the DIP Facility Agent and the DIP Lenders, and it shall comply with the instructions of the DIP Facility Agent with respect to the exercise of such control.  The Prepetition Agents are not and shall not be deemed to be fiduciaries of any kind for the DIP Facility Agent or the DIP Lenders, and the DIP Facility Agent, on behalf of itself and the DIP Lenders, hereby waives and releases the Prepetition Agents from all claims and liabilities arising pursuant to any Prepetition Agent's role under this paragraph 12(b)13(b) as gratuitous bailee and agent with respect to the Prepetition Collateral or the DIP Collateral.

(c)     Any proceeds of Prepetition Collateral received by any Prepetition Secured Party in connection with the exercise of any right or remedy relating to the Prepetition Collateral or otherwise received by any Prepetition Secured Party shall be segregated and held in trust for the benefit of and forthwith paid over to the DIP Facility Agent for the benefit of the applicable DIP

Secured Parties in the same form as received, with any necessary endorsements, or as a court of competent jurisdiction may otherwise direct. The DIP Facility Agent is hereby authorized to make any such endorsements as agent for any such Prepetition Secured Party. This authorization is coupled with an interest and is irrevocable.

(d)    Notwithstanding anything to the contrary in the DIP Documents, the automatic stay provisions of section 362 of the Bankruptcy Code are hereby vacated and modified to the extent necessary to permit the DIP Secured Parties to enforce all of their rights under the applicable DIP documents (subject to the Remedies Notice Period (as defined below)) and take any or all of the following actions, at the same or different time, in each case without further order of, or application to, the Court: (i) immediately upon the occurrence of an Event of Default (as defined in the DIP Credit Agreement) declare (A) the termination, reduction or restriction of any further DIP Commitment to the extent any such DIP Commitment remains, (B) all DIP Obligations to be immediately due, owing and payable, without presentment, demand, protest, or other notice of any kind, all of which are expressly waived by the Credit Parties, notwithstanding anything herein or in any DIP Document to the contrary, and (C) the termination of the applicable DIP Documents as to any future liability or obligation of the DIP Facility Agent and the applicable DIP Lenders (but, for the avoidance of doubt, without affecting any of the DIP Liens or the DIP Obligations), and (ii) upon the occurrence of an Event of Default (as defined in the DIP Credit Agreement) and the giving of five (5) days' prior written notice (which shall run concurrently with any notice required to be provided under the DIP Documents) (the "Remedies Notice Period") via email to counsel to the Debtors, Creditors' Committee (if any), and the U.S. Trustee, unless this Court orders otherwise during the Remedies Notice Period after a hearing, (A) whether or not the maturity of any of the DIP Obligations shall have been accelerated, proceed to protect, enforce and

exercise all rights and remedies of the DIP Secured Parties under the DIP Documents or applicable law, including, but not limited to, by suit in equity, action at law or other appropriate proceeding, whether for the specific performance of any covenant or agreement contained in any such DIP Document or any instrument pursuant to which such DIP Obligations are evidenced, and, if such amount shall have become due, by declaration or otherwise, proceed to enforce the payment thereof or any other legal or equitable right of any of such DIP Secured Parties, and (B) withdraw consent to the Credit Parties' continued use of Cash Collateral and exercise all other rights and remedies provided for in the DIP Documents and under applicable law with respect to the DIP Collateral other than the Funded Reserve Account; *provided*, that no such notice shall be required for any exercise of rights or remedies to block or limit withdrawals from any bank accounts that are a part of the Collateral (including, without limitation, by sending any control activation notices to depositary banks pursuant to any control agreement).

(e)     During the Remedies Notice Period, the Credit Parties shall be permitted to (i) cure any Event of Default and (ii) use Cash Collateral solely (1) to fund payroll and other critical administrative expenses to keep the business of the Credit Parties operating strictly in accordance with the Approved Budget (subject to permitted variances), or as otherwise agreed by the DIP Facility Agent acting at the direction of the Required DIP Lenders, and (2) to fund the Carve-Out. During the Remedies Notice Period, the Debtors, the Creditors' Committee (if appointed) and/or any party in interest shall be entitled to seek an emergency hearing with the Court within the Remedies Notice Period; provided that, with respect to the Debtors, such hearing shall be for the sole purpose of contesting whether, in fact, an Event of Default (as defined in the DIP Credit Agreement) has occurred and is continuing.  Except as set forth in this Interim Order, the Debtors shall waive their right to seek relief under the Bankruptcy Code, including, without limitation,

under section 105 of the Bankruptcy Code, to the extent that such relief would in any way impair or restrict the rights or remedies of the DIP Secured Parties set forth in this Interim Order or the DIP Documents.

(f)    In no event shall the DIP Facility Agent, the DIP Lenders or the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Prepetition Collateral or the DIP Collateral while this Interim Order shall be in effect but without prejudice to any provisions of a Final Order. Further, subject to entry of the Final Order, in no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the secured claims of the Prepetition Secured Parties.

(g)    No rights, protections or remedies of the DIP Facility Agent, the DIP Lenders or the Prepetition Secured Parties granted by the provisions of this Interim Order or the DIP Documents shall be limited, modified or impaired in any way by: (i) any actual or purported withdrawal of the consent of any party to the Credit Parties' authority to continue to use Cash Collateral; (ii) any actual or purported termination of the Credit Parties' authority to continue to use Cash Collateral; or (iii) the terms of any other order or stipulation related to the Credit Parties' continued use of Cash Collateral or the provision of adequate protection to any party.

14.    *Proceeds of Subsequent Financing*.    Without limiting the provisions and protections of paragraph 13 above, but subject and subordinate in all respects to the Carve-Out, if at any time prior to the repayment in full in accordance with the DIP Documents of all the DIP Obligations (including subsequent to the confirmation of any chapter 11 plan or plans with respect to any of the Debtors), the Debtors' estates, any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed shall obtain credit or incur debt pursuant to sections 364(b), 364(c), 364(d), or any other provision of the Bankruptcy Code in violation of this Interim

36

Order or the DIP Documents, then all of the cash proceeds derived from such credit or debt and all Cash Collateral shall immediately be turned over to the DIP Facility Agent for application to the DIP Obligations until such DIP Obligations are paid in full.

15.     *Limitation on Charging Expenses Against Collateral*. Subject to the entry of the Final Order, except to the extent of the Carve-Out, no costs or expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Collateral (including Cash Collateral) pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law or equity, without the prior written consent of the DIP Facility Agent, the DIP Lenders, the Prepetition First Lien Agent, and the Prepetition First Lien Lenders, as the case may be, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Facility Agent, the DIP Lenders, the Prepetition First Lien Agent, or the Prepetition First Lien Lenders, and nothing contained in this Interim Order shall be deemed to be a consent by the DIP Facility Agent, the DIP Lenders, the Prepetition First Lien Agent, or the Prepetition First Lien Lenders to any charge, lien, assessment or claim against the Collateral under section 506(c) of the Bankruptcy Code or otherwise.

16.     *Payments Free and Clear*.  Any and all payments or proceeds remitted to the DIP Facility Agent by, through or on behalf of itself or the DIP Lenders or the Prepetition First Lien Agent on behalf of itself or the Prepetition First Lien Lenders pursuant to the provisions of this Interim Order or the DIP Documents or any subsequent order of the Court shall be irrevocable, received free and clear of any claim, charge, assessment or other liability, including without limitation, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) or 552(b) of the Bankruptcy Code (subject to entry of the Final Order, and to the extent set forth

37

therein, approving the waiver of the Debtors' rights under section 552(b) of the Bankruptcy Code), whether asserted or assessed by through or on behalf of the Debtors.

17.     *Use of Cash Collateral.*  The Credit Parties are hereby authorized, subject to the terms and conditions of this Interim Order, to use Cash Collateral; *provided*, that (a) the Prepetition Secured Parties are granted the Adequate Protection as hereinafter set forth and (b) except on the terms and conditions of this Interim Order, the Credit Parties shall be enjoined and prohibited from at any time using the Cash Collateral absent further order of the Court.

18.     *Adequate Protection of Prepetition Secured Parties.*  Subject and subordinate in all respects to the Carve-Out, the Prepetition Secured Parties are entitled, pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the Bankruptcy Code, to adequate protection of their interests in all Prepetition Collateral, including Cash Collateral, for and equal in amount to the aggregate diminution in the value of the Prepetition Secured Parties' interests in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date, if any ("Diminution in Collateral Value"), for any reason provided for under the Bankruptcy Code, including, without limitation, any such diminution resulting from the depreciation, sale, lease or use by the Credit Parties (or other decline in value) of the Prepetition Collateral, the priming of the Prepetition Liens by the DIP Liens pursuant to the DIP Documents and this Interim Order, the payment of any amounts under the Carve-Out, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (the "Adequate Protection Claims").  To the extent of any Diminution in Collateral Value, the Prepetition Secured Parties are hereby granted the following, in each case subject and subordinate in all respects to the Carve-Out (collectively, the "Adequate Protection Obligations"):

(a)    <u>Prepetition First Lien Adequate Protection Liens</u>.  The Prepetition First Lien Agent, for itself and for the benefit of the Prepetition First Lien Lenders, is hereby granted (effective and perfected upon the date of this Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements), in the amount of the Prepetition First Lien Secured Parties' Adequate Protection Claims, a valid, perfected replacement security interest in and lien upon all of the DIP Collateral, in each case subject and subordinate only to (i) the Carve-Out and (ii) the DIP Liens and any liens to which the DIP Liens are junior (including the Prepetition Permitted Prior Liens) (the "<u>First Lien Adequate Protection Liens</u>");

(b)    <u>Prepetition First Lien Secured Parties' Section 507(b) Claim</u>.    The Prepetition First Lien Agent, for itself and for the benefit of the Prepetition First Lien Lenders, is hereby granted, subject and subordinate in all respects to the Carve-Out, an allowed superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy Code in the amount of the Prepetition First Lien Secured Parties' Adequate Protection Claims, with, except as set forth in this Interim Order, priority in payment over any and all administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code (the "<u>First Lien 507(b) Claims</u>"), which First Lien 507(b) Claims shall be payable from and have recourse to all prepetition and postpetition property of the Credit Parties and all proceeds thereof (excluding Avoidance Actions but including, without limitation, subject to entry of the Final Order, the Avoidance Proceeds).  The First Lien 507(b) Claims shall be subject and subordinate only to the Carve-Out and the DIP Superpriority Claims granted in respect of the DIP Obligations.  Except to the extent expressly set forth in this Interim Order, the Final Order or the DIP Documents, as applicable, the Prepetition First Lien Secured Parties shall not receive or retain any payments, property or other

amounts in respect of the First Lien 507(b) Claims unless and until the DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted) and any claims having a priority superior to or *pari passu* with the DIP Superpriority Claims have indefeasibly been paid in cash in full and all DIP Commitments have been terminated.

(c)     Prepetition First Lien Secured Parties' Adequate Protection Fees and Expenses.  The Credit Parties, for the benefit of the Prepetition First Lien Secured Parties, are authorized to pay and shall pay the current cash payments of the reasonable and documented prepetition and postpetition fees and expenses of the Prepetition First Lien Agent under the Prepetition First Lien Credit Documents and the Ad Hoc Group of First Lien Lenders, including, but not limited to, the reasonable and documented fees and out-of-pocket expenses of (i) Wilmer Hale (solely in its capacity as counsel to the Prepetition First Lien Agent), (ii) Morris Nichols, as local bankruptcy counsel to the Prepetition First Lien Agent and the Ad Hoc Group of First Lien Lenders, (iii) solely to the extent necessary to exercise its rights and fulfill its obligations under the Prepetition First Lien Credit Documents, one counsel to the Prepetition First Lien Agent in each local jurisdiction, (iv) Davis Polk, (v) M-III, and (vi) any other advisors retained by the Ad Hoc Group of First Lien Lenders (the "Adequate Protection Fees and Expenses"), each subject to the review procedures set forth in paragraph 2524 of this Interim Order.

(d)     Prepetition First Lien Secured Parties and Prepetition Second Lien Secured Parties' Information Rights.  The Debtors shall promptly provide the Prepetition First Lien Agent, on behalf of itself and on behalf of the Prepetition First Lien Lenders (including the Prepetition First Lien Revolving Lenders), and the Prepetition Second Lien Agent, on behalf of itself and on behalf of the Prepetition Second Lien Lenders, with all required written financial reporting and other periodic reporting that is required to be provided to the DIP Facility Agent or the DIP Lenders

under the DIP Documents, including but not limited to the reporting required under section 6.01 of the DIP Credit Agreement.

(e)    Prepetition First Lien Secured Parties' Adequate Protection Milestones. The Prepetition First Lien Secured Parties are hereby entitled to performance of those certain case milestones set forth in the DIP Credit Agreement (the "Adequate Protection Milestones"), which cannot be waived, amended, modified or extended from time to time, as to the Prepetition First Lien Secured Parties, absent (i) order of the Court or (ii) prior written consent of the First Lien Required Lenders.[10]

(f)    Survival of Adequate Protection Milestones. The Adequate Protection Milestones and reporting obligations set forth in subparagraphs (d) and (e) above shall survive any termination of the DIP Credit Agreement or the DIP Commitments thereunder. Following any such termination of the DIP Credit Agreement or the DIP Commitments thereunder, the Adequate Protection Milestones may be waived, amended, modified or extended from time to time by the First Lien Required Lenders (in their sole discretion).

(g)    Prepetition Second Lien Adequate Protection Liens.  The Prepetition Second Lien Agent, for itself and for the benefit of the Prepetition Second Lien Lenders, is hereby granted (effective and perfected upon the date of this Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements), in the amount of the Prepetition Second Lien Secured Parties' Adequate Protection Claims, a valid, perfected replacement security interest in and lien upon all of the DIP Collateral, in each case subject and subordinate only to (i) the Carve-Out, (ii) the DIP Liens and

---

[10]    "First Lien Required Lenders" means "Required Lenders" as defined in the Prepetition First Lien Credit Agreement.

any liens to which the DIP Liens are junior (including the Prepetition Permitted Prior Liens), (iii) the First Lien Adequate Protection Liens, and (iv) the Prepetition First Lien Credit Facility Liens (the "Second Lien Adequate Protection Liens" and together with the First Lien Adequate Protection Liens, the "Adequate Protection Liens").

(h)    Prepetition Second Lien Secured Parties' Section 507(b) Claim.  Subject to section 5 of the Prepetition Intercreditor Agreement, the Prepetition Second Lien Agent, for itself and for the benefit of the Prepetition Second Lien Lenders, is hereby granted, subject and subordinate to the Carve-Out, an allowed superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy Code in the amount of the Prepetition Second Lien Secured Parties' Adequate Protection Claims, with, except as set forth in this Interim Order, priority in payment over any and all administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code (the "Second Lien 507(b) Claims" and, together with the First Lien 507(b) Claims, the "Adequate Protection 507(b) Claims"), which Second Lien 507(b) Claims shall be payable from and have recourse to all prepetition and postpetition property of the Credit Parties and all proceeds thereof (excluding Avoidance Actions but including, without limitation, subject to the Court's approval as set forth in Final Order, the Avoidance Proceeds).  The Second Lien 507(b) Claims shall be subject and subordinate in all respects to the Carve-Out, the DIP Superpriority Claims, the First Lien 507(b) Claims and the prepetition claims of the Prepetition First Lien Secured Parties.  For the avoidance of doubt, the Prepetition Second Lien Agent (for itself and for the benefit of the Prepetition Second Lien Lenders) shall not assert its Second Lien 507(b) Claims until the discharge of the DIP Obligations and the First Priority Obligations (as defined in the Prepetition Intercreditor Agreement) has occurred, in accordance with the Prepetition Intercreditor Agreement.

(i)    <u>Prepetition Second Lien Secured Parties' Adequate Protection Fees and Expenses</u>. The Loan Parties, for the benefit of the Prepetition Second Lien Secured Parties, are authorized to pay and shall pay the current cash payments of the reasonable and documented prepetition and postpetition fees and expenses of the Prepetition Second Lien Agent under the Prepetition Second Lien Credit Documents and the Second Lien Lender, including, but not limited to, the reasonable and documented fees and out-of-pocket expenses of (i) Stroock and (ii) Young Conaway, each subject to the review procedures set forth in paragraph 25 of this Interim Order and subject to the limitations set forth in the RSA (as defined in the DIP Credit Agreement), including any exhibits or term sheets attached thereto.

(j)    <u>Prepetition First Lien Secured Parties' Additional Adequate Protection</u>. In the event the Debtors file, support, make a proposal or counterproposal to any party relating to, or take any other similar action in furtherance of (any of the foregoing, a "<u>Non-Permitted Action</u>") a plan of reorganization that does not propose to pay all claims on account of the Prepetition First Lien Debt in cash or with such other consideration acceptable to the First Lien Requisite Lenders (such plan, a "<u>Non-Permitted Plan</u>"), the Debtors shall provide notice to counsel to the Ad Hoc Group of First Lien Lenders not less than seven (7) business days before taking such Non-Permitted Action (the "<u>Non-Permitted Plan Notice</u>"). Upon delivery of a Non-Permitted Plan Notice, the Prepetition First Lien Secured Parties shall have the immediately right to terminate the Debtors' rights to use Cash Collateral pursuant to this Interim Order.

19.    *Adequate Protection Liens and Prepetition Intercreditor Agreements*. Notwithstanding anything to the contrary herein, (a) the Adequate Protection Liens shall retain the same priority between and among the Prepetition Secured Parties as the liens such parties held prior to the Petition Date and (b) all distributions on account of any of the claims granted herein

shall be in accordance with the Prepetition Intercreditor Agreement and the terms of this Interim Order and the Prepetition Intercreditor Agreement shall continue in full force and effect and nothing herein shall be construed as modifying, amending, waiving or in any way impacting the effectiveness and enforceability thereof.  Each of the Prepetition First Lien Secured Parties and the Prepetition Second Lien Secured Parties are deemed to consent to the priming of their Prepetition First Lien Credit Facility Liens and Prepetition Second Lien Credit Facility Liens, as applicable, by the DIP Liens pursuant to the terms of the Prepetition Intercreditor Agreement.

20.     *Reservation of Rights of Prepetition Secured Parties*.  Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Secured Parties; *provided* that, subject to the terms of the Prepetition Intercreditor Agreement, any of the Prepetition Secured Parties may request further or different adequate protection (for the avoidance of doubt, subject to the terms and conditions set forth in the Prepetition Intercreditor Agreement).

21.     *Perfection of DIP Liens and Adequate Protection Liens.*

(a)     The DIP Facility Agent, the DIP Lenders and the Prepetition Secured Parties are hereby authorized, but not required, to file or record (and to execute in the name of the Credit Parties, as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over cash or securities or other property, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder.  Whether or not the DIP Facility Agent (on behalf of the DIP Lenders) or the Prepetition Secured Parties shall, in their sole discretion, choose to file

such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over any cash or securities or other property, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination (subject to the priorities set forth in this Interim Order and the Final Order, as applicable), at the time and on the date of entry of this Interim Order or thereafter.  Upon the request of the DIP Facility Agent or any of the Prepetition Agents, as applicable, each of the Prepetition Secured Parties and the Credit Parties, without any further consent of any party, is authorized, but not directed, to take, execute, deliver and file such instruments (in each case, without representation or warranty of any kind) to enable the DIP Facility Agent or any of the Prepetition Agents to further validate, perfect, preserve and enforce the DIP Liens and the applicable Adequate Protection Liens, respectively.  All such documents will be deemed to have been recorded and filed as of the Petition Date.

(b)     A certified copy of this Interim Order may, in the discretion of the DIP Facility Agent, or any of the Prepetition Agents, as applicable, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby instructed to accept such certified copy of this Interim Order for filing and/or recording, as applicable.  The automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit the DIP Facility Agent or any of the Prepetition Agents to take all actions, as applicable, referenced in this subparagraph (b) and the immediately preceding subparagraph (a).

(c)     To the extent that any Prepetition Secured Party is the secured party under any account control agreements, listed as loss payee or additional insured under any of the Credit

Parties' insurance policies or is the secured party under any other agreement, the DIP Facility Agent, on behalf of the DIP Secured Parties, is also deemed to be the secured party under such account control agreements, loss payee or additional insured under the Credit Parties' insurance policies and the secured party under each such agreement (in any such case with the same priority of liens and claims thereunder relative to the priority of (i) the Prepetition Liens and Adequate Protection Liens and (ii) the DIP Liens, as set forth herein), and shall have all rights and powers in each case attendant to that position (including, without limitation, rights of enforcement, but subject in all respects to the terms of this Interim Order), and shall, subject to the terms of this Interim Order, act in that capacity and distribute any proceeds recovered or received in respect of any of the foregoing, first, to the payment in full of the DIP Obligations, and second, to the payment of the Prepetition Debt (consistent with the terms of the Prepetition Intercreditor Agreement).  In accordance with the terms of this Interim Order and the other DIP Documents, the Prepetition First Lien Agent or the Prepetition Second Lien Agent, as applicable, shall serve as agent for the DIP Facility Agent for purposes of perfecting the DIP Facility Agent's security interests in and liens on all Collateral that is of a type such that perfection of a security interest therein may be accomplished only by possession or control by a secured party.

22.    *Preservation of Rights Granted Under This Interim Order.*

(a)    The occurrence of (a) any Event of Default (as defined in the DIP Credit Agreement) or (b) except as otherwise provided in this Interim Order, any material violation of any of the terms of this Interim Order, shall constitute an event of default (each an "Event of Default") and, subject to the Remedies Notice Period, terminate the right of the Credit Parties to use Cash Collateral pursuant to this Interim Order and upon any such Event of Default, interest, including, where applicable, default interest, shall accrue and be paid as set forth in the DIP Credit

46

Agreement. Notwithstanding any order that may be entered dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code: (A) the DIP Superpriority Claims, the Adequate Protection 507(b) Claims, the DIP Liens, and the Adequate Protection Liens, and any claims related to the foregoing, shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP Obligations and Adequate Protection Obligations shall have been paid in full (and such DIP Superpriority Claims, Adequate Protection 507(b) Claims, DIP Liens and Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest); (B) the other rights granted by this Interim Order shall not be affected; and (C) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph and otherwise in this Interim Order.

(b)     If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect: (i) the validity, priority or enforceability of any DIP Obligations or Adequate Protection Obligations incurred prior to the actual receipt of written notice by the DIP Facility Agent or the Prepetition Agents, as applicable, of the effective date of such reversal, modification, vacation or stay; or (ii) the validity, priority or enforceability of the DIP Liens, the Adequate Protection Liens, the Prepetition Liens or the Prepetition Debt.  Notwithstanding any such reversal, modification, vacation or stay of any use of Cash Collateral or Collateral, any DIP Obligations, DIP Liens, Adequate Protection Obligations or Adequate Protection Liens incurred by the Credit Parties to the DIP Facility Agent, the DIP Lenders or the Prepetition Secured Parties, as the case may be, prior to the actual receipt of written notice by the DIP Facility Agent or the Prepetition Agents, as applicable, of the effective date of such reversal, modification, vacation or stay shall be governed

47

in all respects by the original provisions of this Interim Order, and the DIP Facility Agent, the DIP Lenders and the Prepetition Secured Parties shall be entitled to all the rights, remedies, privileges and benefits granted to parties acting in "good faith" under section 364(e) of the Bankruptcy Code, this Interim Order and the DIP Documents with respect to all uses of Cash Collateral, the DIP Obligations and Adequate Protection Obligations.

(c)     Except as expressly provided in this Interim Order or in the DIP Documents, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Prepetition Liens, the Prepetition Debt and the Adequate Protection Claims and all other rights and remedies of the DIP Facility Agent, the DIP Lenders and the Prepetition Secured Parties granted by the provisions of this Interim Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by: (i) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7, dismissing any of the Chapter 11 Cases, substantively consolidating any of the Chapter 11 Cases with another case, terminating the joint administration of these Chapter 11 Cases or by any other act or omission; (ii) the entry of an order approving the sale of any DIP Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Documents); or (iii) the entry of an order confirming a chapter 11 plan in any of the Chapter 11 Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Credit Parties have waived any discharge as to any remaining DIP Obligations or Adequate Protection Obligations and with respect to the Prepetition Debt.  The terms and provisions of this Interim Order and the DIP Documents shall continue in these Chapter 11 Cases, in any successor cases if these Chapter 11 Cases cease to be jointly administered and in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Prepetition Debt, the Prepetition Liens and the Adequate Protection Claims and all other rights and

remedies of the DIP Facility Agent, the DIP Lenders and the Prepetition Secured Parties granted by the provisions of this Interim Order and the DIP Documents shall continue in full force and effect until the DIP Obligations are paid in full, as set forth herein and in the DIP Documents, and the DIP Commitments have been terminated.

23.    *Limitation on Use of DIP Financing Proceeds and Collateral.*  No DIP Loans, DIP Collateral, Prepetition Collateral or any portion of the Carve-Out, may be used directly or indirectly by any Debtor, any Committee (as defined below), or any trustee appointed in the Chapter 11 Cases or any successor case, including any chapter 7 case, or any other person, party or entity (a) in connection with the investigation, initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation (i) against any of the DIP Facility Agent, the DIP Lenders, or the Prepetition Secured Parties, or their respective predecessors in interest, agents, affiliates, representatives, attorneys, or advisors, or any action purporting to do the foregoing in respect of the Prepetition Debt, liens on the Prepetition Collateral, DIP Obligations, DIP Liens, DIP Superpriority Claims and/or the adequate protection, adequate protection liens and superpriority claims granted to the Prepetition Secured Parties under this Interim Order, or (ii) challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset with respect to, the Prepetition Debt, the DIP Obligations and/or the liens, claims, rights, or security interests granted under this Interim Order, the DIP Documents or the Prepetition Credit Documents including, in each case, without limitation, for lender liability or pursuant to section 105, 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; (b) to prevent, hinder, or otherwise delay the Prepetition Secured Parties', the DIP Facility Agent's or the DIP Lenders', as applicable, enforcement or realization on the Prepetition Debt, Prepetition Collateral, DIP Obligations, DIP Collateral, and the liens,

claims and rights granted to such parties under this Interim Order, each in accordance with the DIP Documents, the Prepetition Credit Documents or this Interim Order; (c) to seek to modify any of the rights and remedies granted to the Prepetition Secured Parties, the DIP Facility Agent or the DIP Lenders under this Interim Order, the Prepetition Credit Documents or the DIP Documents, as applicable; (d) to apply to the Court for authority to approve superpriority claims or grant liens (other than the liens permitted pursuant to the DIP Documents) or security interests in the DIP Collateral or any portion thereof that are senior to, or on parity with, the DIP Liens, DIP Superpriority Claims, Adequate Protection Liens, and superpriority claims and liens granted to the Prepetition Secured Parties, unless all DIP Obligations, Prepetition Debt, Adequate Protection, and claims granted to the DIP Facility Agent, DIP Lenders or Prepetition Secured Parties under this Interim Order, have been refinanced or paid in full or otherwise agreed to in writing by the DIP Lenders; or (e) to seek to pay any amount on account of any claims arising prior to the Petition Date unless such payments are agreed to in writing by the DIP Lenders, in or are otherwise included in the Approved Budget (as initially attached to the Motion, and as updated in accordance with the terms of the DIP Documents); *provided*, that, notwithstanding anything to the contrary herein, the Creditors' Committee (if any) may use the proceeds of the DIP Loans, DIP Collateral (including Cash Collateral) and/or the Carve-Out to investigate, but not prosecute, (i) the claims and liens of the Prepetition Secured Parties and (ii) potential claims, counterclaims, causes of action or defenses against the Prepetition Secured Parties; *provided*, *further*, that no more than an aggregate of $50,000 of the proceeds of the DIP Loans, DIP Collateral (including Cash Collateral) and/or the Carve-Out may be used by the Creditors' Committee (if any) for the foregoing in the immediately preceding proviso.

24.     *Approved Budget*.  The Approved Budget is approved on an interim basis.  Proceeds of the DIP Facility and Cash Collateral under this Interim Order shall be used by the Credit Parties in accordance with the DIP Credit Agreement and this Interim Order and consistent with the Approved Budget (subject to permitted variances as provided in the DIP Credit Agreement) or as otherwise agreed by the DIP Facility Agent and Borrower.  None of the DIP Secured Parties' consent (if any) to, or acknowledgment of, the Approved Budget shall be construed as consent to use of the proceeds of the DIP Facility or Cash Collateral beyond the maturity date set forth in the DIP Credit Agreement, regardless of whether the aggregate funds shown on the Approved Budget have been expended.

25.     *Payment of Fees and Expenses*.  The Credit Parties are authorized to pay the DIP Fees and Expenses, as provided in the DIP Documents, and the Adequate Protection Fees and Expenses.  Subject to the review procedures set forth in this paragraph 25, payment of all DIP Fees and Expenses and Adequate Protection Fees and Expenses shall not be subject to allowance or review by the Court.  Professionals for the DIP Secured Parties and the Prepetition Secured Parties shall not be required to comply with the U.S. Trustee fee guidelines, however any time that such professionals seek payment of fees and expenses from the Debtors prior to confirmation of a chapter 11 plan, each professional shall provide a copy of its invoices (which shall not be required to contain time entries and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine) to the Debtors, the U.S. Trustee and counsel for the Creditors' Committee (if appointed).  The invoices for such fees and expenses may be in summary form only, but shall

include a general, brief description of the nature of the matters for which services were performed, a list of the professionals who worked on such matters and the number of hours each professional billed. The Debtors, the Creditors' Committee (if appointed) and the U.S. Trustee may object to any portion of such fees and expenses, including any objection on the basis that such fees and expenses do not contain reasonable narrative detail, and any such objection must be in writing and state with particularity the grounds therefor and must be submitted to the applicable professional within ten (10) days of the receipt of such invoice (the "Review Period"). If no written objection is received by 12:00 p.m., prevailing Eastern Time, on the end date of the Review Period, the Credit Parties shall pay such invoices within five (5) days. If an objection to a professional's invoice is received within the Review Period, the Credit Parties shall promptly pay the undisputed amount of the invoice and this Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute consensually. Notwithstanding the foregoing, the Debtors are authorized and directed to pay on or after the Closing Date the DIP Fees and Expenses and Adequate Protection Fees and Expenses incurred on or prior to such date without the need for any professional engaged by the DIP Secured Parties or the Prepetition Secured Parties to first deliver a copy of its invoice or other supporting documentation. No attorney or advisor to the DIP Secured Parties or any Prepetition Secured Party shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court. Any and all fees, costs, and expenses paid prior to the Petition Date by any of the Debtors to the (i) DIP Secured Parties in connection with or with respect to the DIP Facility; and (ii) Prepetition Secured Parties in connection or with respect to these matters, are hereby approved in full and shall not be subject to recharacterization, avoidance, subordination, disgorgement or any similar form of recovery by the Debtors or any other person; *provided* that the Debtors reserve the right to seek

recharacterization of adequate protection as being applied to principal and/or seek a determination regarding Diminution in Collateral Value.

26.    *Limits to Lender Liability*.  Nothing in this Interim Order, the DIP Documents, the Prepetition Credit Documents or any other documents related to these transactions shall in any way be construed or interpreted to impose upon the DIP Facility Agent, any DIP Lender or any Prepetition Secured Party any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their business, or in connection with their restructuring efforts.  So long as the DIP Facility Agent and the DIP Lenders comply with their obligations under the DIP Documents and their obligations, if any, under applicable law (including the Bankruptcy Code), (a) the DIP Facility Agent and the DIP Lenders shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the DIP Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person and (b) all risk of loss, damage or destruction of the Collateral shall be borne by the Credit Parties.

27.    *Effect of Stipulations on Third Parties*.  The Debtors' stipulations, admissions, agreements and releases contained in this Interim Order, including, without limitation, in paragraph 7 of this Interim Order, shall be binding upon the Debtors and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors) in all circumstances and for all purposes.  The Debtors' stipulations, admissions, agreements and releases contained in this Interim Order, including, without limitation, in paragraph 7 of this Interim Order, shall be binding upon all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in the Chapter

11 Cases, if any (a "Committee"), and any other person or entity acting or seeking to act on behalf of the Debtors' estates, in all circumstances and for all purposes unless: (a) such Committee or any other person or entity acting or seeking to act on behalf of the Debtors' estates, in each case with requisite standing (subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so), has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, *inter alia*, in this paragraph) by (i) (x) the Creditors' Committee (if any) within 60 calendar days after formation of the Creditors' Committee, (y) if no Creditors' Committee has been appointed, by any party in interest with requisite standing within 75 calendar days after entry of the Interim Order and (z) by any trustee appointed in the Chapter 11 Cases within the time period referenced in clause (y) above, within the later of (1) 75 calendar days after entry of the Interim Order or (2) 10 days from such appointment or (ii) any such later date as has been agreed to, in writing, by each of the Prepetition Agents (at the written direction of the requisite lenders under each applicable facility) (with the consent of the DIP Lenders) as applicable (the time period established by the foregoing clauses (i) and (ii), the "Challenge Period"), (A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Debt or the Prepetition Liens, or (B) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "Challenges") against any of the Prepetition Secured Parties or their respective affiliates and subsidiaries and each of their respective former, current or future officers, partners, directors, managers, members, principals, employees, agents, related funds, investors, financing sources, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each

case in their respective capacity as such (each a "Representative" and, collectively, the "Representatives") in connection with matters related to the Prepetition Credit Documents, the Prepetition Debt, the Prepetition Liens and the Prepetition Collateral; and (b) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested matter, *provided*, *however*, that any pleadings filed in connection with any Challenge shall set forth with specificity the basis for such challenge or claim and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever, waived, released and barred.  If no such Challenge is timely and properly filed during the Challenge Period or the Court does not rule in favor of the plaintiff in any such proceeding then: (a) the Debtors' stipulations, admissions, agreements and releases contained in this Interim Order, including, without limitation, those contained in paragraph 7 of this Interim Order, shall be binding on all parties in interest; (b) the obligations of the Credit Parties under the Prepetition Credit Agreements, including the Prepetition Debt, shall constitute allowed claims not subject to defense, claim, counterclaim, recharacterization, subordination, offset or avoidance, for all purposes in the Chapter 11 Cases, and any subsequent chapter 7 case(s); (c) the Prepetition Liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to recharacterization, subordination, avoidance or other defense; and (d) the Prepetition Debt and the Prepetition Liens on the Prepetition Collateral shall not be subject to any other or further claim or challenge by any Committee, or any other party in interest acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors) and any defenses, claims, causes of action, counterclaims and offsets by any Committee, if any, or any

other party acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors), whether arising under the Bankruptcy Code or otherwise, against any of the Prepetition Secured Parties and their Representatives arising out of or relating to any of the Prepetition Credit Agreements shall be deemed forever waived, released and barred.  If any such Challenge is timely filed during the Challenge Period, the stipulations, admissions, agreements and releases contained in this Interim Order, including, without limitation, those contained in paragraph 7 of this Interim Order, shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any Committee, if any, and on any other person or entity, except to the extent that such stipulations, admissions, agreements and releases were expressly and successfully challenged in such Challenge as set forth in a final, non-appealable order of a court of competent jurisdiction.  Nothing in this Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including any Committee, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, Challenges with respect to the Prepetition Credit Agreements, the Prepetition Debt or the Prepetition Liens.  Any motion seeking standing shall attach a draft complaint or other pleading that sets forth such Challenge, and any Challenge not included therein shall be deemed forever waived, released, and barred.  For the avoidance of doubt, none of the foregoing challenge provisions set forth in this paragraph shall apply to any DIP Secured Party, in their capacities as such, and in no event shall the DIP Facility, DIP Obligations or DIP Liens be subject to challenge pursuant to this paragraph on avoidance or any other grounds by any party.

    28.    *Interim Order Governs*.  In the event of any inconsistency between the provisions of this Interim Order, the DIP Documents or any other order entered by this Court (other than the

Final Order), the provisions of this Interim Order shall govern.  Notwithstanding anything to the contrary in any other order entered by this Court, any payment made pursuant to, or authorization contained in, any other order entered by this Court shall be consistent with and subject to the requirements set forth in this Interim Order and the DIP Documents, including, without limitation, the Approved Budget.

29.     *Binding Effect; Successors and Assigns*.  Subject only to paragraph 27, the DIP Documents and the provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in these Chapter 11 Cases, including, without limitation, the DIP Facility Agent, the DIP Lenders, the Prepetition Secured Parties, any Committee, and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Facility Agent, the DIP Lenders, the Prepetition Secured Parties and the Debtors and their respective successors and assigns; *provided*, that the DIP Facility Agent, the DIP Lenders and the Prepetition Secured Parties shall have no obligation to permit the use of the Prepetition Collateral (including Cash Collateral) by, or to extend any financing to, any chapter 7 trustee, chapter 11 trustee or similar responsible person appointed for the estates of the Debtors.

30.     *Exculpation*.  Nothing in this Interim Order, the DIP Documents, the existing agreements or any other documents related to the transactions contemplated hereby shall in any way be construed or interpreted to impose or allow the imposition upon any DIP Secured Party or any Prepetition Secured Party of any liability for any claims arising from the prepetition or postpetition activities of the Credit Parties in the operation of their businesses, or in connection

57

with their restructuring efforts.  In addition, (a) the DIP Secured Parties and the Prepetition Secured Parties shall not, in any way or manner, be liable or responsible for: (i) the safekeeping of the Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency, or other person, and (b) all risk of loss, damage, or destruction of the Collateral shall be borne by the Credit Parties.

31.    *Limitation of Liability*.  In determining to make any loan or other extension of credit under the DIP Credit Agreement, to permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Documents, none of the DIP Facility Agent, the DIP Lenders or the Prepetition Secured Parties, shall (a) be deemed to be in "control" of the operations or participating in the management of the Debtors, (b) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates, or (c) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601, et seq., as amended, or any similar federal or state statute).  Nothing in this paragraph shall impact or limit the rights of any governmental authority.

32.    *Effectiveness*.  This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014, or any Local Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

33.    *Headings*.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

34.    *Payments Held in Trust*.  Except as expressly permitted in this Interim Order or the DIP Documents, including with respect to the Funded Reserve Account, in the event that any person or entity receives any payment on account of a security interest in DIP Collateral, receives any DIP Collateral or any proceeds of DIP Collateral or receives any other payment with respect thereto from any other source prior to payment in full of all DIP Obligations under the DIP Documents and termination of the DIP Commitments in accordance with the DIP Documents, such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of Collateral in trust for the benefit of the DIP Facility Agent and the DIP Lenders (as applicable based on the specific asset at issue) and shall immediately turn over such proceeds to the DIP Facility Agent, or as otherwise instructed by this Court, for application in accordance with the DIP Documents and this Interim Order.

35.    *Credit Bidding*.  (a) Subject to the express written direction of the Required DIP Lenders and the terms of the DIP Documents, the DIP Facility Agent, on behalf of itself and the DIP Lenders, shall have the right to credit bid, in accordance with the DIP Documents, up to the full amount of the DIP Obligations in any sale of the DIP Collateral (or any part thereof), and (b) subject to the express written direction of the Required Lenders, as defined in and under the applicable Prepetition Credit Agreement, and the terms of the applicable Prepetition Credit Documents, any Prepetition Agent, on behalf of itself and the applicable Prepetition Secured Lenders, shall have the right to credit bid up to the full amount of their respective Prepetition Debt in any sale of the respective Prepetition Collateral (or any part thereof), subject in all respects to the Prepetition Intercreditor Agreement, as applicable, in each case of (a) and (b), as provided for

in section 363(k) of the Bankruptcy Code, without the need for further Court order authorizing the same and whether any such sale is effectuated through section 363(k) or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

36.      *No Third Party Rights*.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect or incidental beneficiary.

37.      *Bankruptcy Rules*.  The requirements of Bankruptcy Rules 4001, 6003 and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

38.      *Necessary Action*.  The Debtors are authorized to take any and all such necessary actions as are necessary or appropriate to implement the terms of this Interim Order.

39.      *Retention of Jurisdiction*.  The Court shall retain jurisdiction to implement, interpret and enforce the provisions of this Interim Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

40.      *Final Hearing*.  The Final Hearing is scheduled for March 9, 2020 at 11:30 a.m. (prevailing Eastern Time) before this Court.

41.      *Objections*.  Any party in interest objecting to the relief sought at the Final Hearing shall file and serve written objections, which objections shall be served upon:

(a)      VIP Cinema Seating, LLC
         7955 Manchester Rd, Suite 125
         St Louis, MO 63143
         Attention: Michael Blatz
         E-mail:  blatz@vipcinemaseating.com

60

with copies to:

Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036
Attention: Gregg M. Galardi; Leonard Klingbaum and Cristine Pirro
Schwarzman;
Email: gregg.galardi@ropesgray.com;
leonard.klingbaum@ropesgray.com; and
cristine.schwarzman@ropesgray.com
*Proposed Counsel to the Debtors*

and

Bayard, P.A.
600 N. King Street, Suite 400
P.O. Box 25130
Wilmington, DE 19899
Attention: Erin R. Fay
Email: efay@bayardlaw.com
*Proposed Counsel to the Debtors*

and

Wilmer Cutler Pickering Hale and Dorr LLP
7 World Trade Center, 250 Greenwich Street
New York, NY 10007
Attention: Andrew N. Goldman, Esq. and Benjamin W. Loveland
Email: andrew.goldman@wilmerhale.com and
benjamin.loveland@wilmerhale.com;
*Counsel to the DIP Facility Agent and Prepetition First Lien Agent*

and

Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
Attention: Damian S. Schaible and Adam L. Shpeen
Email: damian.schaible@davispolk.com and adam.shpeen@davispolk.com
*Counsel to the Ad Hoc Group of First Lien Lenders*

and

Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY 10038

Attention: Jayme T. Goldstein and Daniel P. Ginsberg
Email:jgoldstein@stroock.com and dginsberg@stroock.com
*Counsel to the Second Lien Lender*

and

McDermott Will & Emery LLP
444 West Lake Street
Chicago, IL 60606
Attention: James W. Kapp, III and Brooks B. Gruemmer
Email: jkapp@mwe.com and bgruemmer@mwe.com
*Counsel to the Investor*

and

Office of the United States Trustee
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
Attention.: Linda Richenderfer

to allow actual receipt by the foregoing no later than March 5, 2020 at 4:00 p.m., prevailing Eastern Time.

42.    The Debtors shall within two (2) business days of its entry serve copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) to the parties having been given notice of the Interim Hearing and to any party that has filed a request for notices with this Court.

**Dated: February 20th, 2020**
**Wilmington, Delaware**

_Mary F. Walrath_
**MARY F. WALRATH**
**UNITED STATES BANKRUPTCY JUDGE**

62

80571118_10